## CUNNINGHAM et al. v. CUNNINGHAM.*
### (No. 11835.)

Court of Civil Appeals of Texas. Fort Worth. July 16, 1927.

Rehearing Denied Sept. 24, 1927.

1. **Parent and child** ⬤⟶3(1)—**At common law, father must support his legitimate children during minority.**

At common law, a father is bound to support his legitimate children during their minority, and this is the rule in all states.

2. **Constitutional law** ⬤⟶83(3)—**Divorce** ⬤⟶ 311—**Decree requiring divorced husband to make specified payments for support of minor children may be enforced by contempt proceedings (Const. Bill of Rights, § 18).**

Decree requiring divorced husband to make specified payments for support of his minor children, awarded to custody of wife, may be enforced by contempt proceedings on his refusal to make such payments, and is not within prohibition of Const. Bill of Rights, § 18, against imprisonment for debt.

3. **Divorce** ⬤⟶324—**Minor children, awarded to mother by divorce decree, may sue to compel father to contribute to their support; criminal remedy not being exclusive (Pen. Code 1925, art. 602).**

Minor children, awarded to mother by divorce decree, may sue to compel father to make specified monthly payments for their support on his refusal to contribute anything thereto, though they were not entitled to a final judgment for a sum fixed by the court in advance as necessary for their future support, but it is duty of court to retain case on docket during minority of any of children, with authority at any time to make further allowance, or to modify or increase it; remedy by fine or imprisonment provided by Pen. Code 1925, art. 602, not being exclusive or adequate.

Appeal from District Court, Montague County; Vincent Stine, Judge.

Suit by Rozelle Cunningham and others, by next friend, against John Cunningham. Judgment for defendant, and plaintiffs appeal. Reversed and remanded, with instructions.

Donald & Donald, of Bowie, and Jameson & Crawford, of Montague, for appellants.

Benson & Benson, of Bowie, for appellee.

DUNKLIN, J. Rozelle Cunningham, a girl nine years of age, Cathleen Cunningham, a girl seven years of age, and Weldon Cunningham, a boy four years of age, are the children of Mrs. Toria Cunningham and John Cunningham, her divorced husband. The mother instituted this suit for the benefit of those children against John Cunningham to recover a judgment in the sum of $10,500, payable in monthly installments of $20 for each of the children during their minority.

The basis of plaintiff's demand consisted in allegations that the children are in dire need of food and clothing, and that the mother is unable to supply them therewith, and that the defendant has failed and refused to furnish any means of support for said children. The petition contains these further allegations:

"That at present these plaintiffs are now with their mother, Mrs. Toria Cunningham, who is endeavoring to supply such food, clothing, and other commodities necessary to their support and maintenance, but, on account of her lack of finance, and being unable to earn any sum sufficient therefor, she is unable to so provide for them, which said fact is known to said defendant; that they are without means of obtaining food, clothing, and other commodities necessary for their support and maintenance at this time, in that they are unable to secure an extension of credit to cover such necessary purchases, and they are unable to obtain a place where such can be purchased upon the faith or credit of their father, John Cunningham, or their mother, Mrs. Toria Cunningham; that their said mother, Toria Cunningham, is likewise unable to provide credit for them so that such necessary food, clothing and other commodities necessary to their support and maintenance, can be procured, and therefore these plaintiffs are entitled to have this court determine the amount necessary therefor, and render judgment accordingly.

"That the defendant, John Cunningham, is possessed of good physical and mental faculties, and at the present has an earning capacity of approximately $2,500 annually, and has a good position that is permanent, which these plaintiffs say produces unto him that sum. That, in addition to his present earning power and capacity, the said defendant has both personal and real property which could be converted into funds with which such food, clothing, and other commodities necessary to their support and maintenance can be provided, all of which is needed in maintaining and giving said children reasonable educational advantages which should be offered unto them as they reach a scholastic age.

"That, in order to provide sufficient food, clothing, and other commodities necessary to their support, maintenance, and education, based upon an amount in keeping with reason and their station in life, it will require the sum of $60 per month during the period of their minority, that is, $20 for each of them per month during their minority, which said sum these plaintiffs would say is in all things reasonable and within the power of the defendant to provide. That, based upon this sum, as aforesaid, these plaintiffs are entitled to judgment in the sum of $10,500, payable in monthly installments of $60 each and every month."

---

⬤⟶For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error granted November 30, 1927.

The trial court sustained a general demurrer to the petition, and, the plaintiffs having declined to amend, the cause was dismissed. From that judgment plaintiffs have prosecuted this appeal.

[1] We deem it unnecessary to cite authorities in support of the proposition that at common law a father is bound to support his legitimate children during their minority, and that this is the rule in all states.

In Gulley v. Gulley, 111 Tex. 233, 231 S. W. 97, 15 A. L. R. 564, it was held, quoting from the syllabus of the opinion, that:

"A father, owning an adequate estate, could be required to pay the value of necessaries for his minor children when furnished by the mother, from her own adequate estate, after divorce decree awarding the custody of the children to the mother and failing to provide for their maintenance; the father not being relieved of his primary duty to support the children by a divorce decree which is either silent as to their custody and maintenance or awards their custody to the mother."

In Speer v. Sykes, 102 Tex. 451, 119 S. W. 86, 132 Am. St. Rep. 896, the following was said:

"The fact that the court awarded the custody of the minor children to the wife did not deprive Sykes of his paternal interest in them, nor did it discharge him from his legal and moral obligation to care for and support them. They were still his offspring and a part of his family."

Other decisions are cited to a like effect.

The record does not disclose upon what theory the trial court sustained the general demurrer to plaintiffs' petition, but in briefs for both parties filed in this court it is said that the trial court's views were controlled by the decision of the St. Louis Court of Appeals in Worthington v. Worthington, 212 Mo. App. 216, 253 S. W. 443. That was a suit by the guardian of seven minor children against the father, in which it was alleged that the father had abandoned and deserted his minor children, and had refused to contribute to their support or to make any provisions for their maintenance, and that the children were without means of support, and dependent upon the charity of others. It was also alleged that the defendant owned a valuable farm in St. Louis county, and was earning from $350 to $500 a month as a life insurance agent. The plaintiff sought a decree requiring the defendant to pay the guardian a reasonable sum for the support and maintenance of the children. A demurrer to that petition was sustained, and that ruling was affirmed by the Court of Appeals. That decision, as shown by the opinion written, was influenced largely by the decision of the Supreme Court of Mississippi in Rawlings v. Rawlings, 121 Miss. 140, 83 So. 146, 7 A. L. R. 1259, although it is stated in the opinion that in the Mississippi case there was a very strong dissenting opinion to the

conclusion reached by the majority. The Rawlings Case was a suit by six minor children against their father for a decree requiring the defendant to pay a monthly allowance for the support of the plaintiffs, who were alleged to be destitute of means of support. There was a further prayer that the allowance to be so made should be fixed as a lien upon the property upon a plantation owned by defendant. A demurrer to the bill was sustained by the trial court, and that ruling was approved by a majority of the Supreme Court of Mississippi, two of the Judges, Ethridge and Holden, dissenting in an opinion filed. In that case the following was quoted with approval from another decision by the Supreme Court of Mississippi, to wit, Hewlett v. George, 68 Miss. 703, 9 So. 885, 13 L. R. A. 682:

"The peace of society, and of the families composing society, and a sound public policy, designed to subserve the repose of families and the best interests of society, forbid to the minor child a right to appear in court in the assertion of a claim to civil redress for personal injuries suffered at the hands of the parent. The state, through its criminal laws, will give the minor child protection from parental violence and wrongdoing, and this is all the child can be heard to demand."

Further quotations from authorities appearing in the majority opinion in that case are as follows:

"The moral obligation of a parent to support his child is not directly enforceable, and a court of equity cannot compel the performance of this duty. The duty may be enforced, however, under statute, or indirectly, as where a stranger supplies an infant with necessaries and recovers therefor against the parent." 21 Am. & Eng. Enc. Laws (2d Ed.) 1052.

"The civil remedy is more commonly worked out by holding that, if the father leaves his children destitute, he confers on any one who finds them in that condition an agency to supply them with necessaries; the volunteer can therefore recover the cost of the supplies from the father in a civil action." 20 R. C. L. p. 624, par. 31.

"No court of chancery in England ever made an order requiring a father, however wealthy, to set apart out of his own estate a fund for the maintenance and education of his infant child, or even to provide sustenance for such child. The common law of England has, from the earliest times, left this duty to the natural feelings of the parents, and experience has shown that the confidence has not in general been misplaced." Huke v. Huke, 44 Mo. App. 308.

After citation of other authorities of like effect, the majority of the court in the Rawlings Case had this to say:

"We are not justified in enlarging the jurisdiction of chancery beyond that indicated by the statute, and in opening the door of the courts to any unruly or disobedient child who may complain at either the amount or kind of support and maintenance provided by the father. The same reasons that led the court to the con-

clusion reached in Hewlett v. George, 68 Miss. 703, 9 So. 885, 13 L. R. A. 682, are persuasive here. 'The repose of families and best interests of society forbid' any such action. If the chancellor can fix in advance the amount of support each dissatisfied child must receive, then is parental authority superseded by judicial fiat, parental discipline swept away by self-assertion and disobedience on the part of children, and the integrity of the home, the cornerstone of society, is undermined."

It thus appears that the conclusion reached in these authorities, to the effect that a minor child has no right of action against the father in a court of equity to compel him to furnish the necessaries for the support of the minor, is based upon two reasons: (1) That there is no precedent in equity for such a proceeding; and (2) that such a proceeding is contrary to public policy, in that it would be detrimental to the integrity of the home, which is the cornerstone of society.

Mr. Pomeroy, in his superb work on Equity Jurisprudence, volume 1, § 60, had this to say:

"The general language of some writers, and particularly of Blackstone, presents an erroneous theory as to the office of precedents in equity, and if followed, would check and abridge the beneficent operation of its jurisdiction. The true function of precedents is that of illustrating principles; they are examples of the manner and extent to which principles have been applied; they are the landmarks by which the court determines the course and direction in which principles have been carried. But with all this guiding, limiting and restraining efficacy of prior decisions, the chancellor always has had, and always must have, a certain power and freedom of action, not possessed by the courts of law, of adapting the doctrines which he administers. He can extend those doctrines to new relations, and shape his remedies to new circumstances, if the relations and circumstances come within the principles of equity, where a court of law in analogous cases would be powerless to give any relief. In fact, there is no limit to the various forms and kinds of specific remedy which he may grant, adapted to novel conditions of right and obligation, which are constantly arising from the movements of society. While it must be admitted that the broad and fruitful principles of equity have been established, and cannot be changed by any judicial action, still it should never be forgotten that these principles, based as they are upon a Divine morality, possess an inherent vitality and a capacity of expansion, so as ever to meet the wants of a progressive civilization."

It is impossible to conceive a higher moral, social, or legal obligation than the duty which a father owes to support his offspring during dependency. That such is his duty is intuitive, and is recognized by all the authorities. That duty is inherent in the breast even of the brute, who, with unswerving devotion, not only supplies food to its young, but is ever ready to protect them from violence, even at the risk of life. The normal man is of a higher type than the brute. We are taught that he is created in the image of his Maker. But exceptions are to be found in some men who, in their conceptions of social and moral obligations, fall far below the standard of the brute. Government has been established and laws are enacted and enforced to deal with those anomalies in human form. It often happens that there is a lack of statutory or common law applicable to specific facts of each situation that may arise in the complexities of human affairs. But general rules of equity have been established to reach such cases, and one of its maxims is that wherever there is a right there is a remedy. As frequently asserted by courts, that maxim would be a vain boast if a court of equity is powerless to supply a remedy for such wrongs by a father towards his child, as are alleged in plaintiff's petition in this case. Indeed, no higher principle of equity can be imagined than the duty of a parent to supply his child with needed food and raiment; and there could be no more urgent demand for the application of that maxim than in a case where the father willfully refuses to perform that duty when he is able to perform it. In order to establish a precedent, some court must pioneer the way in the first instance. Even though no precedent could be found for awarding equitable relief in a suit like the present one, instituted to compel the father to supply his dependent minor child with means of sustenance, especially when but for the charities of others it could not survive, this court would not hesitate to establish such a precedent. However, we are not without precedent·in the decisions of the appellate courts of this state and those of other states as well, in which by different methods the performance of that duty has been enforced.

In Hedtke v. Hedtke, 112 Tex. 404, 248 S. W. 21, it was held that, in decreeing a divorce in the suit of a wife to whom was awarded the custody of the minor children, the court was authorized to award to the wife and minor children the use of land belonging to the husband as a homestead during the life of the wife. In the opinion in that case the court had this to say:

"The income from property belonging to the husband during the marriage is subject to a charge or burden for the maintenance of the wife and every minor child. * * * For the purpose of doing equity, the court may award all the personal property to either spouse, and may subject the income, rents, or revenues of all real estate, belonging to either or both of the spouses, to the support of either or both of them, or to the education and support of the children."

That decision was in line with former decisions of the same court, which are cited.

In Hughes v. Hughes (Tex. Civ. App.) 259 S. W. 180, a divorce was granted to the wife,

who was also awarded custody of the minor children of the marriage. The decree of divorce also set apart to the wife property of the value of $13,000, and to the defendant three sections of land valued at $21,265, against which there was an outstanding lien of $9,400. The court further decreed and established a trust in the three sections of land awarded to the defendant for the support and maintenance of the minor children. Four hundred dollars per annum was fixed by the court as an allowance for the support of the children, and the husband was appointed trustee of the land, with instructions to pay over to the plaintiff, the mother of the children, for their benefit, the allowance so made for the support of the children. There was a further provision in the decree that the court reserved the right to appoint another trustee of the land for like purposes, in the event the father of the child should fail to pay over the allowance as required by the judgment. That judgment of the trial court was affirmed by the Court of Civil Appeals at Amarillo, and an application for writ of error to the Supreme Court was dismissed for want of jurisdiction. In the opinion, the following was said:

"Should the husband fail to obey the order of the court, such court would be powerless to enforce its decree by way of contempt proceedings against the defendant (Ex parte Gerrish, 42 Tex. Cr. R. 114, 57 S. W. 1123); hence the necessity of fixing the liability by lien on property or by placing such property in the hands of a trustee, where the defendant cannot reach it or convey the title to others. This right of the court is recognized in 19 C. J. 360."

In discussing the further contention that the judgment had fixed the sum of $400 in advance, as the amount necessary to support the children, the court said:

"It is true that a fixed sum is named, and that no period of time is designated in which this trust is to terminate. However, the trial court's jurisdiction continues, and at any time the requirements of this judgment become too onerous or work to the destruction of the trust estate, and it is so made to appear to the court, any inequality in the working of such judgment or any provision shown to work a hardship to the trust estate can be modified or amended."

While that decision was in a divorce proceeding, the fixing of the lien upon the separate property of the husband was upon equitable principles, which were applied for the purpose of enforcing the legal obligation of the father to support his children, notwithstanding the dissolution of the marriage relation. The decision in that case is in accord with the general principles announced in Rice v. Rice, 21 Tex. 58, and Gulley v. Gulley, 111 Tex. 236, 231 S. W. 97, 15 A. L. R. 564; Hedtke v. Hedtke, supra; Milburn v. Milburn (Tex. Civ. App.) 254 S. W. 121.

[2] Furthermore, we differ from the court

in the announcement quoted from Hughes v. Hughes, supra, to the effect that the trial court would be powerless to enforce the decree by way of contempt proceedings against the father, in the event he should fail to obey the order of the court to pay over the allowance for the support of the children. As shown above, that conclusion was based upon the decision of our Court of Criminal Appeals in Ex parte Gerrish, on an application for a writ of habeas corpus. In the Gerrish Case it was held that Gerrish could not be imprisoned for contempt in refusing to discharge the judgment of the court as part of its decree of divorce in favor of the wife, requiring him to pay $20 per month for the support of his child, which was awarded to the mother, plaintiff in the suit, for that use, because such imprisonment would be in violation of section 18 of our Bill of Rights, which provides that "no person shall ever be imprisoned for debt." It was held that a judgment requiring the payment of the sum fixed would be a debt, within the contemplation of the provision of that article of our Constitution.

Ex parte Davis, 101 Tex. 607, 111 S. W. 394, 17 L. R. A. (N. S.) 1140, was a decision by our Supreme Court on an application for writ of habeas corpus made by F. M. Davis, praying that he be discharged from the custody of the sheriff who held him under an order of the district court of Dallas county for the refusal to pay a sum fixed by the court as alimony and attorney fees, which were allowed to the plaintiff in an action by his wife against the relator for a divorce; the allowance fixed by the court being made pending the divorce proceedings. In that case our Supreme Court discussed the Gerrish Case, in which it was pointed out that the decree upon which the commitment for contempt was awarded was in fact a final judgment granted in the divorce suit, and that the allowance of $20 per month for the support of the child was by agreement of the parties, and was therefore a judgment for debt, within the provisions of the Bill of Rights quoted. But our Supreme Court further had this to say:

"Mrs. Davis being without the means of support for herself and her children and Davis having ability to support them, it was both his natural and legal duty to do so notwithstanding the pendency of the suit for divorce. The wife had a claim upon Davis for the performance of his duties toward her and her children, and, the court having jurisdiction of all the parties, had the power to compel the husband to discharge his obligation to his wife and children. Davis having refused to obey the order of the court, and it appearing that he was able to comply with the order and that he had no excuse for the refusal to do so, the district court had authority to order him into confinement until he should comply with its mandate. 1 Ency. Pl. & Pr. 439; 14 Cyc. 760; Carlton v. Carlton, 44 Ga. 220; Lewis v. Lewis, 80 Ga. 706 [6 S. E.

918, 12 Am. St. Rep. 281]; Chase v. Ingalls, 97 Mass. 527; Lyon v. Lyon, 21 Conn. 196; Andrew v. Andrew, 62 Vt. 498, [20 A. 817]; Haines v. Haines, 35 Mich. 144; Pain v. Pain, 80 N. C. 322.

"It is claimed by the relator that the order of the court assessing against him a sum as alimony to be paid to his wife for the support of herself and her children, was a judgment, and, being a judgment, it was a debt for the enforcement of which he could not be imprisoned under the Constitution of this state. We have cited only a portion of the authorities which sustain the action of the court, we might have added many others, for, so far as we have been able to find, the decisions of the courts upon the question are unanimous.

"The claim of Mrs. Davis for support of herself and children was not a debt. She could not have maintained an action against her husband to enforce that duty except in the manner in which it was done in the proceedings for divorce. The Constitution of this state does not prohibit the imprisonment of a man except for the collection of a debt and the proceeding in this case being for the enforcement of a duty natural and legal, due from Davis to his wife and children, all of whom were subject to the jurisdiction of the court, does not come within the prohibition of the Constitution.

"Neither was the order of the court directing the payment of the sum by Davis into court for the benefit of his wife and children a debt; the order was in fact not a final judgment. It was limited to the time when the final judgment should be entered in the suit and under our statute [Rev. St. 1895, art. 2986] could not go beyond that. The order was interlocutory strictly and collateral to the proceeding for divorce, a method by which the court would enforce its jurisdiction over the parties and compel the doing of an act in the discharge of a duty from one to the other. There are many instances in the proceedings of the courts where the performance of an act may be enforced by imprisonment and would not come within the prohibition of the Constitution although it might involve the payment of money. The order made in this case was not a final judgment for it was subject at any time to modification, or even to be set aside and annulled by the judge who entered it, and the performance of it could be by the judge excused at any time upon a showing of inability or other good reason why it should not be performed. The order could not be enforced except in that proceeding for divorce. If it were not complied with the plaintiff in the case could not maintain an action in any other court in this state to enforce the payment. 4 Ency. Pl. & Pr. 432, 433. It seems to us clear that the order entered by the court did not in any sense constitute a debt against the defendant, Davis.

"The judgment of the district court commanding that the relator be confined in jail until he shall comply with the order of the court is not void, therefore, it is ordered by this court that the relator be remanded to the custody of the sheriff of Dallas county to be by him confined under the order of the district court and that the relator pay all costs of this proceeding."

That decision was followed and cited with approval by the Supreme Court in Allen v. Woodward, 111 Tex. 457, 239 S. W. 602, 22 A. L. R. 1253.

Ex parte Gregory, 85 Tex. Cr. R. 115, 210 S. W. 204, was an application for a writ of habeas corpus for the release of the relator from imprisonment which had been adjudged against him by the district court for refusing to obey an injunction theretofore issued in a divorce proceeding, restraining the relator from alienating or incumbering community property owned by the parties to the suit. The decision in that case was by our Court of Criminal Appeals, and, in an opinion rendered by Justice Morrow, the case of Ex parte Davis was cited with approval, and the application for habeas corpus was dismissed. In that case the following was said:

"It being the purpose of the application to obtain release from an order made in a civil case, we think the application should have been addressed to the Supreme Court. Ex parte Alderete [83 Tex. Cr. R. 358], 203 S. W. 763. In order to avoid conflict in the decisions of the courts of last resort, and to give effect to the evident purpose of the Legislature in the passage of article 1529 of the Revised Statutes, conferring jurisdiction upon the Supreme Court in such cases, the practice generally followed by this court is to pursue the course mentioned. With no intent to pass upon the merits of the application, we would say it presents no reasons sufficient to justify a departure from the rule stated."

See, also, 6 R. C. L. 527, § 40.

In 12 Corpus Juris, 87, the following is said:

"Inasmuch as the constitutional prohibition of imprisonment for debt does not take away the power of the judge to commit to jail for contempt, imprisonment to compel compliance with the mandate of a court order, decree, etc., is generally authorized if defendant is financially able to comply therewith."

And on page 88:

"An order of court committing a person to prison for contempt for failure to obey an order requiring him to pay over a specific sum of money or to deliver specific property found to be in his possession or under his control is not an infringement on the constitutional inhibition against imprisonment for debt."

[3] We respectfully differ from the opinions of the eminent judges noted above, to the effect that to grant relief in such cases as the present suit would be against public policy, because it would tend to destroy the integrity of the home, in that it would tend to encourage wrongful suits for money by recalcitrant children against their parents. On the contrary, we believe that public policy would be best subserved and the integrity of the home better protected by awarding relief in such cases as the present. In the first place, in the present suit the integrity of the home has already been destroyed; the marriage relation has been dissolved; and the

father, who still owes the parental duty of support to his children during their tender years of infancy, has not only abandoned them, but has refused to contribute to their support and maintenance, leaving them entirely on public charity. To permit him to willfully violate such a sacred duty would tend to encourage divorces, since, in addition to getting rid of a wife by committing acts which would justify her to procure a divorce, he would be rid of all responsibility of supporting the children also; and it is a matter of common knowledge that instances of that kind are now occurring with deplorable and increasing frequency.

The desertion of home and family by a husband and father is far more injurious to the family status than the mere institution of a groundless suit by an intractable child against a parent for means of support could possibly be, and manifestly of more frequent occurrence. And in the present state of our social system, with its ever growing evils that are tending to the undermining of the family relation, which is the bulwark of its wellbeing, such desertions have become so common that this state in the year 1913, in the exercise of a wise public policy, enacted a penal statute to stem the tide by making it a penal offense punishable by fine of $25 and imprisonment for one year, for a husband or parent to desert, neglect, or refuse to provide for the support of his wife or child in destitute circumstances. See Tex. Crim. Stat. art. 602. Nor will the existence of such a statute preclude the granting of relief to plaintiffs in this case, since the wrongs complained of have caused, and will continue to cause, irreparable injury to their rights, which are of a pecuniary nature and value; and, even though the state should prosecute and punish the defendant under that statute, that proceeding would be wholly inadequate to supply plaintiffs' present needs for immediate support. 14 R. C. L. p. 377, § 79.

We have reached the conclusion that, while plaintiffs are not entitled to recover a final money judgment against the defendant for a sum to be fixed by the court in advance as necessary for their future support, as prayed for by them, yet, under their prayer for general relief and the facts alleged, which the demurrer admits to be true, they are entitled to the following relief, which the trial court, sitting as a court of equity, has jurisdiction and authority to award:

First. A decree fixing in advance for a stated period of time such an amount for the support and maintenance of the minor plaintiffs as the court in his discretion, after notice to the defendant, and upon evidence heard, may determine to be fair and equitable alike to the children and their father, considering the necessities of all and the ability of the father to furnish such.

Second. A further decree ordering and requiring defendant to pay to plaintiffs' mother for the maintenance and support of such minors the amount so fixed by the court, and, in the event of defendant's refusal to obey that order, without just cause, the judge of the trial court will be authorized and empowered, after due notice to him upon evidence heard, to adjudge him in contempt and punish him by either fine or imprisonment or by both.

Third. A further decree within the discretion of the trial judge, fixing the amount of such allowance as a lien to be thereafter enforced by said court or under its direction, if necessary, on any property, real or personal, that defendant may own at the time of any hearing, and appointing a trustee, with all the powers of a receiver, to take charge of all such property and collect the rents and revenues arising therefrom, and return the same into the registry of the court, to be applied to the support and maintenance of the minor children, upon orders of the trial court to be thereafter made.

It will be the duty of the trial court to retain the case upon his docket during the minority of any of said children, if necessary, to accomplish the purpose of the suit, with authority at any time to make further allowances for the support and maintenance of any or all of said children, and authority to modify or increase any allowence theretofore made; all parties in interest to be given due notice of such proceedings and an opportunity to be heard.

Accordingly the judgment of the trial court is reversed, and the cause is remanded, with instructions to the trial court to reinstate the case on his docket for further proceedings not inconsistent with the conclusions stated in this opinion.