SALLIE A. HEWLETT *v.* W. W. GEORGE, EXECUTOR OF S. A. RAGSDALE.

1. WITNESS. *Claim against estate.   Code* 1880, § 1602.   *Death of defendant.*
   Under § 1602, code 1880, which makes one incompetent as a witness to establish his own claim against the estate of a decedent, the deposition of a plaintiff, taken during the lifetime of the defendant and pending suit, cannot be read on the trial after defendant's death and revivor against his personal representative.

2. SAME. *Death of defendant pending suit.   Competency of plaintiff.*
   Such deposition is not made competent because defendant, being a woman, was entitled to rebut the same by having her own deposition taken, which, in case of her death, could be read in evidence by her legal representative.

3. ACTION FOR PERSONAL INJURIES. *Death of defendant.   Punitive damages.   Code* 1880, § 2080.
   The right to recover punitive damages for personal injuries ceases with the death of the wrong-doer, although the death occurs after action begun against him. Only compensatory damages can be recovered from the personal representative.   Code 1880, § 2080.

4. DAMAGES. *Compensation.   False imprisonment.   Injury to reputation, etc.*
   Compensatory damages are not necessarily limited to actual money losses. For an unlawful incarceration of plaintiff by defendant in an insane asylum compensation may be had, not only for money expended in procuring a release, but for consequent humiliation, shame, disgrace, and injury to reputation. Compensation for these, not being punitive damages, may be recovered after the death of the defendant from his personal representative.

5. PERSONAL INJURIES. *Action by child against parent.   Public policy.*
   A parent is not civilly liable to a child for personal injuries inflicted during minority, and while the relation of parent and child, with its mutual obligations, exists.

68   708
e80   62

68   703
89   261

FROM the circuit court of Lauderdale county.

HON. S. H. TERRAL, Judge.

The appellant, Sallie A. Hewlett, a minor, brought this action by her next friend, in 1887, against her mother, Sarah A. Ragsdale, to recover $10,000 for having wilfully, illegally, and maliciously caused her to be imprisoned for ten days in the East Mississippi insane asylum. The declaration alleges that said incarceration was procured by defendant deceitfully and in pursuance of a plot to deprive plaintiff of her liberty, in order to get control and possession of certain of her property and valuable papers pertaining to certain litigation.

The defendant, Sarah A. Ragsdale, was personally summoned and filed her plea of general issue at the July term, 1887. She also gave notice under the general issue, that she would show that her daughter, the plaintiff, prior to said imprisonment, was an inmate of a house of ill-fame in the city of Chicago; that defendant caused her to return to Meridian, in said county, and gave her a home in her own house; that plaintiff was given to loose and unchaste habits, and that defendant, to save her and the family from disgrace, and to have her treated for a certain disease, procured her to be confined in the asylum; that two reputable physicians had certified to plaintiff's insanity, and that she was in fact insane; that while proceedings to have plaintiff declared a lunatic had been instituted and dismissed, this was because of a promise of reformation by her; and that, after her release from the asylum, she again became and remains an inmate of a house of prostitution.

In May, 1888, the deposition of plaintiff was taken after due notice to the defendant. After the taking of the deposition and before the trial, the defendant, Sarah A. Ragsdale, died, and her executor, W. W. George, intervened by leave of court to defend the suit. Meantime the plaintiff, having become of age, was substituted in lieu of her next friend as plaintiff, and the cause thereafter proceeded in her own name and right against the executor of her mother.

On the trial defendant moved the court to suppress the deposition of plaintiff, upon the ground that plaintiff, by such deposition,

was seeking by her own testimony to establish her claim against the estate of a deceased person, in violation of § 1602, code 1880. The motion was sustained.

The case was tried in January, 1891, and resulted in a verdict in favor of plaintiff for $5000, which, upon motion of counsel for the executor, was set aside, because, as alleged in briefs of counsel, the court was of the opinion that plaintiff could not recover punitive damages, and that no actual damages had been proved, except $200 paid by plaintiff to procure her release from the asylum. On the second trial plaintiff recovered only $200. A motion for new trial by plaintiff was overruled, and she prosecutes this appeal.

Section 2080, code 1880, which is one of the statutes referred to in the opinion of the court, provides that when any testator or intestate shall in his lifetime have committed any trespass to the person or property of another, his executor or administrator shall be liable to the same action by such other as is allowed against the testator or intestate; provided, that vindictive damages shall not be awarded; and provided further, that such action is commenced within one year after publication of notice to creditors.

*Witherspoon & Witherspoon,* for appellant.

1. It was error to exclude plaintiff's deposition. At the time it was taken, May 31, 1888, Mrs. Ragsdale was living. She was notified of the taking of the deposition, and her counsel were present. She afterwards had more than six months in which to take her own deposition, which she, being a woman, was entitled to have taken under § 1608 of the code. Under such circumstances, it cannot be said that plaintiff, by her deposition, is testifying against the estate of the deceased person. If Mrs. Ragsdale had taken her own deposition, as she had the right to do, both depositions would have been competent at the trial. *Strickland* v. *Hudson,* 55 Miss. 235.

The use of the deposition would not violate the spirit and reason of the statute. The competency of a witness is to be determined by the facts existing at the time the testimony is given. The

68 Miss.—45

deposition was given while the defendant was living.    2 Woerner's Am. Law of Admin. § 398 ; 80 N. Y. 261.

The testimony was competent when taken, and became then a part of the evidence in the case.    78 Pa. 415.

All statutes which provide for the perpetuation of evidence are in furtherance of justice and should receive a liberal construction. 81 Ib. 114.

The test of present admissibility is the competency of the testimony at the time it was given.    100 Ib. 374; 41 Ib. 119.

2. It was error to refuse plaintiff's instructions that malice and intentional wrong on the part of Mrs. Ragsdale entitled plaintiff to punitive damages.    This case is governed by § 1513, code 1880, which provides that when either party to a personal action shall die before judgment, the executor shall have full power to prosecute or defend the action, and the court shall render judgment for or against the executor in the same manner as if the original party were in existence.    This case is very different from what it would have been if the plaintiff had waited until after her mother's death to bring suit.

Section 2080 of the code, which prohibits the recovery of vindictive damages after the death of the wrong-doer, was not intended to apply where a suit for punitive damages was promptly brought against the trespasser in his lifetime.

3. The court erred in refusing to instruct that mental suffering, shame and humiliation, and injury to reputation are not proper elements of compensatory damages.    3 Lawson's Rights & Rem. §§ 1104, 1218, 1302, 1970 ; 61 Mich. 445 ; 39 Kan. 93.

4. The court erred in setting aside the first verdict of $5000. It was fully warranted by the evidence.

*Walker & Hall,* for appellee.

1. The deposition of plaintiff was properly suppressed under § 1602 of the code.    *Jacks* v. *Bridewell,* 51 Miss. 881 ; *Wood* v. *Stafford,* 50 Ib. 370 ; *Rushing* v. *Rushing,* 52 Ib. 329 ; *Buie* v. *Buie,* 67 Ib. 456.

It may be true that if Mrs. Ragsdale's deposition had been taken

and used, that of plaintiff would have been competent, but that is not a material inquiry, as Mrs. Ragsdale's deposition was not taken. The authorities of other states cited in support of the admissibility, find no support in the decisions of this state. While the defendant, Mrs. Ragsdale, could have procured her own deposition to be taken, it was still the right of plaintiff to compel her personal attendance in court. If such attendance had been required, clearly her testimony would have been inadmissible.

2. The first verdict was plainly contrary to the instructions in that it allowed punitive damages. Such damages are not recoverable in this case. Code 1880, § 2080; 1 Sutherland on Dam. 158; 5 Am. & Eng. Ency. of Law, 42.

The sum paid to procure her release is the limit of plaintiff's actual damages.

3. We submit that the evidence shows that the relation of parent and child with its mutual rights, duties and responsibilities existed at the time of appellant's confinement in the asylum. If so, public policy will deny her any action against her mother for a personal injury. 7 Am. & Eng. Ency. of Law, 665.

WOODS, J., delivered the opinion of the court.

The deposition of plaintiff, taken in a pending suit in a court of law, during the lifetime of defendant's testatrix, on the final trial of this cause, and after the death of the original defendant, and the revivor against the executor of the deceased was offered in evidence on behalf of plaintiff, and, on motion of defendant, was excluded by the trial court, and this action of the court is assigned for error.

Relying upon the proposition that the competency of a witness is determinable by the facts existing at the time the testimony of such witness is given, counsel for appellant, with much vigor and ingenuity, contended that the appellant's deposition was competent evidence, even under our statute, which forbids any person testifying as a witness to establish his claim against the estate of a deceased person, which originated during the lifetime of such deceased person. Reported cases from New York, Pennsylvania and Mary-

land are cited and relied upon by counsel as directly supporting this contention. If these decisions had been made in cases similar to the one at bar, and upon statutes identical with ours, we should feel constrained, nevertheless, to decline to follow them. But we are unable to say they were made in cases involving the same or similar facts, as those shown in the record before us, or upon statutes identical with ours. They may be perfectly correct expositions of the laws existing in the states where rendered, and yet be not at all persuasive as authority in this state.

The argument of counsel is, that under section 1608, code 1880, the plaintiff had the right to have her own deposition taken in this cause; that the original defendant was then alive, and, by her counsel, attended the taking of such deposition and was made acquainted with its contents and their significance; that thus advised and warned, it was the right of defendant then to have procured the taking of her own deposition, with a view to meeting, if she could, the case made against her by plaintiff's evidence contained in her deposition; and that, having failed or neglected to have her own deposition taken when she might have done so, her executor cannot now be heard to say that the lips of the plaintiff are sealed by law because the defendant's have been sealed by death. The argument is plausible, but fallacious, we think.

Let us assume that the deposition of the plaintiff was taken because she was a female—a class of cases covered by the fifth paragraph of section 1608. In this particular case, the original defendant being likewise a female, it is contended she might have enjoyed the same 'right accorded the gentle sex by our law, and have procured her own deposition to be taken and have it used, and her executor might also have used her deposition on this trial, and that no advantage could have, in such case, accrued to plaintiff, or possible harm or injustice to defendant, or to the executor of her will on final trial. If all citizens of this state were females, or if all suitors in the lower courts were females, the construction of our statutes, necessarily involved in appellant's contention, would be greatly strengthened.

But besides the favored class to whom the statute extends the

personal privilege of testifying by deposition, there exists that large and litigious and unfavored class, the male citizens, upon whom no such privilege has been conferred.

Now, let us suppose the original defendant in this suit to have been a male, one of the unprivileged class, upon whom the right to testify by deposition had not been conferred, and let us further suppose such male defendant had been alive at the time of the taking plaintiff's deposition, without the power or privilege of preparing to meet it by having his own deposition taken, and that he had subsequently died before trial, could it be reasonably insisted that the plaintiff's deposition could have been properly introduced in evidence on trial of the suit revived against the dead man's executors? If not, the argument of counsel is specious, in this, that by the same statute we have two rules for recovery of claims against the estates of decedents prescribed; one working no advantage to the plaintiff or hardship to the defendant, where both parties are females, but the other working unconscionable advantage to the plaintiff and gross inequality and injustice to the defendant, where the plaintiff is a female and the defendant is a male. This incongruous construction is not to be tolerated. The general laws of the state touching property, none the less than life and liberty, must bear uniformly on male and female alike, and the mere deference shown woman by our law, in permitting her, in certain states of cases, to withdraw from a public examination as a witness, in open court, and to testify by deposition, must not be extended beyond the obvious purpose of the legislature.

Moreover, under the statute we are considering, section 1608, it seems certain, from an examination of the sixth paragraph of said section, that in cases such as we have presented in this record, the competency of a witness does not depend absolutely upon the facts existing at the time the deposition was taken; for notwithstanding the fact that the deposition of a female or of any witness residing within this state, but more than sixty miles from the place of trial, may have been taken, yet on proper showing, the female or other witness residing more than sixty miles away, may be compelled to

appear and testify in open court. In these classes of cases, the competency of the evidence offered does not depend absolutely upon the facts existing at the time the deposition was taken, but upon the conditions existing at the time of trial.

We see no error in the rulings of the court on this point.

The action of the court in its instructions in excluding from the consideration of the jury the question of punitory damages is, also, assigned for error.

On this point, it will be sufficient to say, that at common law this action would have abated upon the death of the defendant, and no recovery could have been had against her representative. The doctrine was that for a personal wrong, the offender could not be followed into the grave, and the dead be visited with punishment. Our statutes have modified the common law to the extent of permitting a recovery against the representative of the deceased wrong-doer to an amount sufficient to compensate for the actual damage sustained by the injured party, but the realm of the dead is not invaded and punishment visited upon the dead.

This brings us next to the instructions of the court touching compensatory damages. By the second instruction asked by plaintiff and refused by the court, and by the instruction given for the defendant, the jury were shut up to return damages, if they found for plaintiff, not exceeding the actual amount, in dollars and cents, shown to have been expended by the plaintiff in procuring her release from the insane asylum. It is true that in the instruction given for defendant, the jury was told that a recovery might be had for actual damages, but by the second refused instruction of the plaintiff, actual damages were held not to include compensation for mental suffering and pain, the sense of humiliation, shame, and disgrace, and injury to reputation, inflicted upon and endured by plaintiff. Here was actual damage to the extent of $200, and actual damage for eleven days of time lost during confinement in the asylum, and to these should have been added damages for mental pain and suffering, shame and mortification, and injury to character. Surely these injuries were real ones, and compensation for these would have been an award for actual damages. Com-

pensatory and actual damages are one, and compensation for wrongs done to one's character is, in no sense, punitory. We cannot consent that actual damages, in this case, must be confined to the few dollars and cents shown to have been expended by plaintiff to secure her release from the asylum, and that no compensatory damages were awardable for shame and anguish and hurt to character.

On this point we are of opinion the action of the trial court was erroneous, and that its judgment must be reversed. We decline, however, to reinstate the verdict of the jury on the first trial, because we are not satisfied as to plaintiff's right to a recovery absolutely.

The evidence shows that the plaintiff was the minor daughter of the defendant, who had been married, but who, at the time of the alleged injuries, was separated and living away from her husband. Whether she had resumed her former place in her mother's home, and the relationship, with its reciprocal rights and duties, of a minor child to her parents, does not sufficiently appear. If, by her marriage, the relation of parent and child had been finally dissolved, in so far as that relationship imposed the duty upon the parent to protect and care for and control, and the child to aid and comfort and obey, then it may be the child could successfully maintain an action against the parent for personal injuries. But, so long as the parent is under obligation to care for, guide and control, and the child is under reciprocal obligation to aid and comfort and obey, no such action as this can be maintained. The peace of society, and of the families composing society, and a sound public policy, designed to subserve the repose of families and the best interests of society, forbid to the minor child a right to appear in court in the assertion of a claim to civil redress for personal injuries suffered at the hands of the parent. The state, through its criminal laws, will give the minor child protection from parental violence and wrongdoing, and this is all the child can be heard to demand.

On this very delicate and difficult point in the case, the evidence is most unsatisfactory, and for this reason, if for no other, we decline to reinstate the first verdict.

*Reversed and remanded.*