WESTERN UNION TELEGRAPH CO. v. RAGSDALE.

[71 South. 818.]

1. TELEGRAPHS AND TELEPHONES. *Damages. Punitive damages. Mental sufferings.*

Where in a suit against a telegraph company for damages for false report on non-delivery of a telegram, it was not shown that the agents of the company were guilty of wilful wrong or gross negligence but on the contrary it was shown that they acted in good faith, the company was not liable to punitive damages.

2. ACTIONS FOR DAMAGES. *Mental suffering.*

In an action for damages against a telegraph company for false report on non-delivery of a telegram, damages for mental suffering cannot be recovered where there was only simple negligence, there being no bodily injury and no malice, insult, oppression or fraud.

APPEAL from the circuit court of Hinds county.

HON. W. A. HENRY, Judge.

Suit by Wm. A. Ragsdale against the Western Union Telegraph Company. From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*J. B. Harris,* for appellant.

*Mayes & Mayes,* for appellee.

HOLDEN, J., delivered the opinion of the court.

This is an appeal from the circuit court of Hinds county, First district, where the appellee, W. A. Ragsdale, recovered a judgment for one thousand dollars damages against the Western Union Telegraph Company, and the telegraph company appeals to this court. The declaration filed by Ragsdale, plaintiff in the court below, contains two counts, and seems to be, in substance, an action for libel; but on the trial of the case, and on this appeal here, the appellee appears to have abandoned his contention of libel, and relies upon his right to recover in tort, which is based upon an alleged false report made in writing, and which false report is alleged to have been made through the gross negligence, maliciousness, and wantonness of the telegraph company. The facts, upon which this suit is based, may be briefly stated as follows: Judge A. K. Nippert, of Cincinnati, Ohio, was a stockholder in the American Delinting Company, in which the appellee, W. A. Ragsdale, was also a stockholder and manager. The American Delinting Company was a corporation, having its principal office in Jackson, Miss. On October 7, 1913, Judge Nippert sent the following message, a night letter, to the appellee Ragsdale:.

"Cincinnati, Ohio, 7th, 1913.

"W. A. Ragsdale, Care American Delinting Co., Jackson, Miss.: Want to send a young man to Jackson and West Point prior to engaging him to assist in company's business. When and where can you meet him? Wire me immediately.          [Signed]    NIPPERT."

It appears from the evidence that the appellant telegraph company had a main office in Cincinnati and several branch offices there, the branch offices being located in different parts of the city, for the convenient handling and dispatch of business; that messages addressed to parties in Cincinnati would come to the main office, and from the main office be transmitted to a branch office most conveniently located to the place of delivery, and messages to be sent from Cincinnati were received at the branch offices and transmitted to the main office, and from the main office would be transmitted to the point of destination; that messages to and from Cincinnati were handled in this way, by various employees in the branch and main offices. The above message set forth was received at a branch office in Cincinnati, known as the "MK" branch office, by Mrs. J. Q. Dobell, the telegraph operator who had charge of that branch office. She was called up by some one at the Mohawk Bank, and asked to send a messenger boy for a message; she replied that she did not have a messenger boy convenient, and shortly afterwards, the party came to the branch office in an automobile and filed a message. She asked the party to leave his address, but he stated that it would be unnecessary, as the party to whom the message was addressed would know the proper address to send the reply to. The message was promptly transmitted to Jackson, Miss. The office of the American Delinting Company was very well known to the employees of the telegraph office at Jackson, it being only about two blocks from the telegraph office. Upon the receipt of this message at Jackson it was immediately given to a messenger boy, one John Pierce, who took it at once to the

office of the American Delinting Company, where he
found the office locked.   He then made inquiry of a
Mr. Dreyfus, occupying an office in the same building,
and was informed by Mr. Dreyfus to inquire of Mr.
Montgomery, who, it appears, was the secretary of the
delinting company.   The messenger boy did make in-
quiry of Mr. Montgomery, and was told by him that
Mr. Ragsdale, the appellee, was out of town.   The Mes-
senger boy thereupon put a notice under the door, stat-
ing that there was a telegram for Mr. Ragsdale.   He
then took the message back to the telegraph office and
gave it to the clerk for attention there.   The message
was handled in this office by Mrs. J. N. Olsen.   She then
sent a service message to Cincinnati, reading as follows:

"MK Cincinnati Ohio Undelivered your night letter
7 Ragsdale signed Nippert Office locked Advised party
out of city. [Signed] Jackson, Miss., Oct. 8."

It is well to state here that the telegram in question
was a night letter.   It is also an undisputed fact that
appellee, Ragsdale, was out of the city and did not
return until the 13th of October, when he found the
notice and went to the telegraph office and got the tele-
gram.   Mrs. Olsen, the employee in the office at Jack-
son, had also mailed a postal card, notifying Ragsdale
of the message.   The service message last set out above
was promptly transmitted to Cincinnati.   It went to the
main office and from the main office was telegraphed to
the branch office MK there at Cincinnati; and here is
where the trouble began.   When this service message
reached the branch office MK, Mrs. Dobel, in charge,
sent a service message to the main office, at 1:10 p. m.,
reading as follows:

"S. Y. S. No. 9 of to-day please deliver message to
Judge A. K. Nippert at the courthouse."

She did not say "service" message, and this mistake
started the trouble.   Mrs. Dobel testifies that the reason
she attempted to transmit the message through the main
office instead of delivering it to Judge Nippert from her

office was that the courthouse where Judge Nippert was presiding as judge was a great distance from office MK, and that it was more convenient to have the message delivered in the way that she undertook. This message was received at the main office by a Mr. Phelan, an employee there. Mr. Phelan testifies that when this service message was received, he sent it into the hands of Miss Loretta Fette, the service clerk on the fifteenth floor of the building, for attention, as ordinarily she ought to have looked up the original Cincinnati relay of the night letter filed by Judge Nippert and the service message addressed to the MK branch office, and returned them to him; but she misunderstood the instructions, as explained by her in her testimony, and on account of the omission of the word "service," she thought that the original message was referred to, and she sent a service message to Jackson, Miss., instructing the Jackson office to deliver the original message to Judge Nippert at the courthouse, meaning the courthouse in Jackson. (It appears that "S. Y. S." means, see your service; and "N. L." means night letter; "MK" indicates the branch office handling the message.) When this service message was received at Jackson, an effort was made to deliver the original message to Judge Nippert at the Jackson courthouse. The service message which was received in the Jackson office by Mrs. Olsen was in these words:

"S. Y. S. to-day Deliver msg to Judge A. K. Nippert at the courthouse our N. L. 7th Ragsdale signed Nippert."

An effort was made to deliver this message to Judge Nippert at the courthouse in Jackson, but, of course, he could not be found there; and the following service message was sent to Cincinnati on the morning of the 8th:

"S. Y. S. date re your N. L. 7th Ragsdale Judge Nippert unknown at courthouse"

—which means:

"See your service date in the matter of night letter 7th, Ragsdale. Judge Nippert unknown at the courthouse."

When this service message from Jackson—which we will call service message No. 3—was received in Cincinnati, it was sent to Mrs. Dobel at the MK branch office from the main office. When Mrs. Dobel received it she discovered the mistake, and thereupon sent the following message to the main office in Cincinnati:

"S. Y. S. No. 37 to-day Party is in Cincinnati courthouse Judge.

"[Signed] MK Cincinnati, O., Oct. 8, 1913."

And here another mistake came in. This service message No. 3, in the course of transmission, came into the hands of Chas. T. Roach, another employee, and he, supposing that the party unknown at the courthouse was Ragsdale, wrote out the following service message, which was delivered to Judge Nippert at the courthouse in Cincinnati:

"Your telegram dated Oct. 7 to W. A. Ragsdale, American Delinting Co., Jackson, Miss., is undelivered. Reason: Party unknown at the courthouse."

This message was signed R. C. Bliss by him, and sent to the branch office MR, which was located near the Cincinnati courthouse. Roach explains why he signed Bliss' name, and why he made the change in the service so as to read as delivered to Judge Nippert, in his testimony as follows: That as service clerk, he would handle on an average of twenty-five or thirty service messages per day; that from custom he would frequently use the word "party" instead of repeating the name, using it in conjunction with the name of the addressee; that his office would receive service messages from all over the United States, and this word was frequently used; that it was a matter of convenience and was used in this form instead of repeating the name of the addressee; that his attention was drawn to the use of this word when he first became connected with the company as serv-

ice clerk; that he did not substitute the word "party" for "Nippert," as his notice clearly showed that he was under the impression that Mr. Ragsdale was unknown, and that the word "party" as used in said notice meant Ragsdale; that he was led to this conclusion by reason of the service message which he had before him, and that his belief as to the meaning of the message was based upon the form of the service message before him; that he thought the word "Signed" had been omitted in error, and that Ragsdale, the addressee, was unknown at the courthouse in Jackson, Miss.; that this appeared to him from the reading of this service message; that from all of this he erroneously concluded that it was Ragsdale who was unknown at the courthouse; that he misunderstood the service message and made it read, "party (Ragsdale) unknown at the courthouse," which was a mistake, as he should have said, "Judge Nippert unknown at courthouse." This last service message was finally received by Judge Nippert, which stated, in short, "Party unknown at courthouse," meaning that the appellee, Ragsdale, was unknown at the courthouse at Jackson, Miss. Upon the above state of facts, the plaintiff in the court below recovered a judgment for one thousand dollars as damages; and the appellant telegraph company asks a reversal of this case, and urges that the lower court erred, and assigns the following: First, that the proof did not show any actual damages; second, that there is no proof warranting the infliction of punitive damages; third, that no damages can be recovered in this case as compensation for mental pain and anguish.

As to the question of actual damages, the appellee claimed that, on account of the false report, he incurred considerable expense in going to West Point and Cincinnati, and that he also incurred other expenses on account of the false report in the message. But it appears from the evidence in this record that all these expenses were paid by the American Delinting Company,

and that the appellee suffered no loss for that reason, and that the loss, if it could be successfully claimed, would be by the delinting company, who was not a party to this suit.   It also appears from the testimony that these alleged damages, on account of the said expenses incurred, were not proximately caused by the erroneous and false report made by the appellant telegraph company, as the false report to Judge Nippert was straightened out and corrected by mail, and it was unnecessary for the appellee to incur the expenses complained of on account of the false report made by the telegraph company.

As to the second proposition, of punitive damages, we have carefully considered all the testimony disclosed by this record, which tended to prove that the telegraph company was guilty of gross negligence or wantonness, which would justify the infliction of punitive damages. It is true that the appellant's agents and employees made several mistakes and blunders in handling the service messages in question; but it clearly appears to us that in no instance were any of the agents or employees of appellant guilty of willful or gross negligence, and the proof abundantly shows that they were acting in good faith, and with an honest purpose to promptly and properly carry out the business intrusted to their care. Therefore we are forced to the conclusion that no punitive damages were recoverable in this case.

As to the third contention, that compensatory damages for mental pain and anguish may be allowed in a case of this kind, we find from the record that we have here what appears to be, on its face, a harmless, false report, in which Judge Nippert is told that Mr. Ragsdale is "unknown at the courthouse."   It is claimed that this false report was a reflection upon Mr. Ragsdale, and that it damaged him in the estimation of Judge Nippert. Ordinarily, in some instances, a report that one is "unknown at the courthouse" might be a recommendation instead of a reflection; but, in this particular case, if

this false report did any harm, it was only temporary.
No man with the high standing of appellee in Jackson
should be seriously injured or materially damaged by
such language as was used in this false report. Judge
Nippert testifies, concerning this, as follows:

"I do not know whether Mr. Ragsdale was damaged
in any way by reason of said telegram not reaching him
or by reason of the notice to me by the Western Union
Telegraph Company that party was unknown at the
courthouse. I can only speak for myself, and I can state
that taking the notice for a true and correct report, I
was very much perturbed and Mr. Ragsdale necessarily
was injured in my personal opinion of him, even though
temporarily so, until I received his letter and telegram,
above referred to, and the letter from Judge Mayes,
which set matters right so far as Mr. Ragsdale and
myself were concerned."

So, it will be seen that the mistakes, errors, and blun-
ders, finally ending in the false report which reached
Judge Nippert, were all straightened out and corrected
in a very short time, and the former *status quo* was fully
restored between Judge Nippert and Mr. Ragsdale.
Judge Nippert sent the young man to Jackson, and all
interruption in the business relations was ended. But
it is contended by the appellee that Mr. Ragsdale suf-
fered humiliation and embarrassment on account of this
false report, and that he should be permitted to recover
compensatory damages for this mental suffering, and
counsel cites the case of *Hewlett* v. *George,* 68 Miss. 703,
9 So. 885, 13 L. R. A. 682. We cannot agree with counsel
that this case is in point here, for obvious reasons, and
we are constrained to follow the rule announced in Tele-
*graph Co.* v. *Rogers,* 68 Miss. 748, 9 So. 823, 13 L. R. A.
859, 24 Am. St Rep. 300, and *Duncan* v. *Telegraph Co.,*
93 Miss. 500, 47 So. 552,, which is the settled law of this
state. Consequently, there can be no recovery in the
case at bar for mental pain and suffering of Mr. Rags-
dale, as compensatory damages; nor can he recover for

such mental pain and suffering in the instant case as a part of punitory damages, because the facts are not such as justify the infliction of punitive damages. There is no "libel" under the proof in this case. In the briefs and arguments of counsel on both sides in this cause, it appears that counsel for the appellee characterizes the conduct of the appellant telegraph company as a "Comedy of Errors;" and counsel for appellant replies and admits this to be true, but says that while it is a "Comedy of Errors," this case is also "Much Ado About Nothing." We agree with counsel on both sides, and will add in conclusion that "All's Well that Ends Well."

*Reversed and remanded.*