## FRIEDMAN v LABOS

Ohio Appeals, 7th Dist, Mahoning Co

No 2118.   Decided Oct 13, 1936

Shermer & Goldstein, Youngstown, and Clyde W. Osborne, Youngstown, for plaintiff in error.

A. T. Kryzan, Youngstown, John A. Willo, Youngstown, and W. P. Barnum, Youngstown, for defendant in error.

## OPINION

By NICHOLS, J.

Anna Labos filed her petition in the Court of Common Pleas of Mahoning County, Ohio, against George Zubal, wherein she prayed damages in the sum of $15,000 for alleged breach of promise to marry. The answer of defendant admits that he is twenty-one years of age and denies each and every other allegation contained in plaintiff's petition, and by way of further defense denies that the allegations set forth in plaintiff's petition are sufficient to constitute a good cause of action. Subsequent to the filing of the original petition the defendant, George Zubal, died, and thereafter, upon leave of court, plaintiff filed an amended petition, wherein Steve Zubal, executor of the estate of George Zubal, deceased, was named defendant. In the amended petition it is alleged that George Zubal died testate on the 7th day of April, 1932, and that Steve Zubal was the duly designated, qualified and acting executor of the estate of the deceased; alleged that on November 16th, 1930, and again on April 28th, 1931, George Zubal proposed marriage to the plaintiff and that upon his earnest solicitations, affectionate representations, and upon his persuasive request the plaintiff in good faith accepted such proposal and that she and George Zubal mutually and verbally agreed to marry each other at their convenience in the near future, and thereupon plaintiff and George Zubal made known to their large circle of friends and acquaintances their engagement to marry, which became common knowledge in and about the community; that plaintiff and George Zubal, at the time of such agreement to marry, were both unmarried, of full age and competent to contract to marry; that on or about June, 1931, George Zubal purchased and gave to the plaintiff a certain diamond ring, commonly known as an engagement ring, in token of his sincerity and in order to pledge their troth; and that arrangements were completed by George Zubal and the plaintiff to be married at Cleveland; that shortly before the date upon which the marriage ceremony was to be performed George Zubal appealed to the plaintiff to delay the wedding for two or three weeks under the pretext that he wished to have opportunity to appease his brother, Steve Zubal, the present executor, who was bitterly opposed to such marriage. The amended petition then alleges:

"That on or about the 15th day of February, 1932, George Zubal suddenly and unexpectedly repudiated and renounced said contract to marry on his part, and absolutely refused to marry the plaintiff."

The amended petition further alleges that from the time plaintiff and George Zubal plighted their troth, in the spring of 1931, until the sudden and unexpected repudiation and renunciation by George Zubal of the contract to marry, plaintiff and George Zubal were together in almost constant association, and by reason of the promises George Zubal has wrongfully, without cause or justification, repudiated, renounced and terminated the promise and agreement to marry plaintiff, and that plaintiff has been disgraced, humiliated, made sick and despondent and subject to ridicule and to social ostracism, has suffered loss in her character and reputation and in the esteem and confidence of her friends and acquaintances and in her chances of future marriage, and has suffered great mental anguish and motification; that George Zubal's conduct was malicious and wanton, and that by reason thereof the plaintiff, in addition to compensatory damages, is lawfully entitled to exemplary or punitive damages; that George Zubal was a man of substantial means, well worth in excess of $15,000, for which she prays judgment in the amended petition.

Steve Zubal, as executor of the estate of George Zubal, deceased, filed his answer to the amended petition of plaintiff admitting the death of George Zubal, and that he has been duly appointed executor of the estate of the deceased, and admitting that plaintiff and George Zubal were both over twenty-one years of age at the time of the alleged contract to marry. The answer denies each and every other allegation in plaintiff's amended petition, and by way of further answer, the defendant says that if the deceased did propose marriage to the plaintiff he was not accepted and that plaintiff kept putting him off from time to time with an answer to the effect

that she would have to wait until the disposition of a certain action then pending for the wrongful death of her husband, and that when an agreement of settlement of that action was made, she then refused to marry deceased. Plaintiff by her reply denied the allegations of the answer to the amended petition.

The cause came on for trial in the Common Pleas Court and resulted in a verdict for plaintiff in the sum of $5,000, for which judgment was rendered after the overruling of a motion for new trial. Petition in error was duly filed in this court, and since the cause has been docketed in this court Steve Zubal has been removed as executor of the estate of George Zubal, deceased, and Joseph Friedman has been appointed by the Probate Court of Mahoning County to administer the estate under the law. which appointment Joseph Friedman has duly accepted and qualified thereunder.

We will hereinafter refer to the parties as plaintiff and defendant. The defendant complains of the following errors, to-wit:

A. Prejudicial misconduct on the part of the trial judge in his conduct and demeanor throughout the trial toward counsel for the defendant below.

B. Error of the trial court in excluding competent and admitting incompetent evidence to the prejudice of the defendant below.

C. Error of the trial court in giving in charge to the jury before argument plaintiff's request number one.

D. Error of the trial court in giving in charge to the jury before argument plaintiff's request number four.

E. Error of the trial court in giving in charge to the jury before argument plaintiff's request number seven.

F. Error of the trial court in giving in charge to the jury before argument plaintiff's request number eight.

G. Error of the trial court in charging the jury before argument plaintiff's request number nine, covering the matter of exemplary damages and in charging the jury after argument on the question of exemplary damages.

Our attention is called to the many instances shown throughout the record wherein the trial court engaged in unseemly argument and denunciation of counsel for the defendant, criticising counsel's mode of examination of the witnesses and upon one occasion when the court had propounded certain questions to counsel for the defendant and an answer was given which did not seem to be in all respects suitable to the court, the judge instructed the jury to "disregard these statements, they are highly improper, no gentleman or attorney would make them." This statement by the trial judge, wherein it was intimated that counsel for the defendant was not a gentleman or an attorney, was ▮▮▮▮▮▮ entirely uncalled for, evidenced lack of judicial temperament upon the part of the trial court, and is subject to censure. However, we do not find in the record many instances wherein counsel for the defendant propounded incompetent questions to the witnesses and wherein such counsel made improper statements with reference to objections of opposing counsel, and whereby it is shown in the record that the court had some provocation for the apparent antipathy which he exhibited toward counsel for the defendant. Upon a number of occasions the court stated in the presence of the jury that he would penalize counsel for defendant by deducting a number of minutes, varying from five to twenty minutes, from the argument of counsel to the jury. It is impossible to know the effect which the remarks of the court, as well as of counsel, may have had upon the deliberations of the jury, but since we must reverse this cause for other and more ▮▮▮▮▮▮ definite reasons, we do not find the conduct on the part of the trial judge and his demeanor throughout the trial toward counsel for the defendant of such a prejudicial character as would of itself authorize us to reverse the judgment of the lower court.

The error complained of in excluding competent and admitting incompetent evidence refers principally to evidence relating to the financial condition of the defendant and certain disposition which he made of a portion of his property previous to his death. This evidence was doubtless admitted by the court upon the theory that exemplary or punitive damages could be awarded to the plaintiff, and since we have concluded that the trial court was clearly in error in submitting the question of exemplary or punitive damages to the jury, it will not be of importance to analyze the record relative to the admission of incompetent testimony and the rejection of competent testimony but will go directly to the errors complained of in the matter of the charge of the court to the jury.

Plaintiff's request to charge number one,

given by the trial court to the jury before argument, is as follows:

"The court says to you as a matter of law that while the burden of proof is upon the plaintiff, and it is for her to prove her case by the preponderance of the greater weight of the evidence, still, if, after a consideration of all the evidence, including the testimony of the witnesses and exhibits, you find that the evidence preponderates in her favor, if only by the weight of a hair, it will be sufficient for you to return a verdict for the plaintiff. Incidentally, in determining the facts, you, as jurors, simply deal with the probabilities."

We have underscored the words "weight of a hair."

The law requires that matters at issue in civil cases be established only by a preponderance of the evidence. In charging the jury in the case of **Van Allen v Industrial Commission of Ohio, 26 O.N.P. (N.S.) 188,** the court said to the jury in charging upon the subject of the preponderance of the evidence that:

"It has been said that even though the scales turn within the estimation of a hair, that will be sufficient."

This case was affirmed by the Court of Appeals of Muskingum County and motion to certify the record was overruled by the Supreme Court of Ohio on June 30th, 1925. We are unable to say that ▮▮▮▮▮▮ plaintiff's request number one, given to the jury in this case, was prejudicial to the defendant.

Plaintiff's request number four, given by the trial court to the jury before argument, is as follows:

"The court instructs you as a matter of law, that if you find from the evidence that George Zubal proposed marriage to Anna Labos, and that she accepted such proposal; that thereby they became engaged to marry, that subsequently George Zubal changed his mind and failed and refused to marry Anna Labos for the reason that his brother Steve Zubal, or his sister-in-law, Anna Zubal, or both of them, opposed such marriage, that would be no legal defense to an action for damages for such breach of promise on the part of George Zubal to marry Anna Labos."

There was considerable evidence in this case, as shown by the record, tending to prove that George Zubal breached his promise to marry the plaintiff only because of the bitter opposition of his brother and sister-in-law to such marriage. We do not find that the court committed prejudicial error in giving to the jury plaintiff's request number four.

Plaintiff's request number seven, given by the trial court to the jury before argument, is as follows:

"Under the laws of Ohio, marriage confers certain rights upon the wife in the husband's real and personal estate, of which she cannot, afterwards, be deprived, except by her own consent, where a husband dies leaving a spouse and no children, these are:

(a)   the right to live in the family homestead for one year after the husband's demise;

(b)   an allowance for one year's support;

(c)   an exemption of 20 per cent of the appraised value of the husband's estate, but not to exceed $2,500.00; and

(d)   one-half of the remainder of the estate."

We do not see how this charge was applicable in view of the fact that the plaintiff never became the wife of George Zubal, and the question to be submitted to the jury was not what the plaintiff would have received at his death if the marriage had taken place, but only the damages to which the plaintiff was entitled by reason of the breach of the alleged contract to marry. It was proper for the plaintiff to show the financial condition of the plaintiff at the time of the breach of the contract. The measure of damages for breach of contract is determined as of the time of the breach of the contract. We know of no reason why a different time should ▮▮▮▮▮▮ apply to actions for breach of promise. Had the marriage taken place, there may have been children, in which event the share of the estate going to the widow would not be as contained in this charge. The charge only assumes a situation wherein the marriage had taken place and the defendant had died before there was a child or children of the marriage and is based upon speculation and not upon fact. Had the marriage taken place, it is speculative as to whether the plaintiff would have survived the defendant, and had the marriage taken place we know of nothing that would have

prevented the defendant from giving away his property in his lifetime to the end that there would be no estate to descend upon his death. The court committed error in the giving of this charge, prejudicial to the defendant. Taylor v Schlichter, 118 Oh St 139.

We have been cited to no case in Ohio or elsewhere wherein a charge of this kind has been sustained, and it seems apparent that this charge requires the jury to base its verdict upon speculation rather than upon fact.

Plaintiff's request number eight, given by the trial court to the jury before argument, gives as two of the elements to be considered in computing the pecuniary loss sustained by the plaintiff the following:

"(c) The loss of an interest in the estate of the defendant;

(d) the injury to future prospects of marriage;"

This charge is objectionable for the same reasons hereinbefore stated as to request number seven with reference to the loss of an interest in the estate of the defendant. This request had properly stated to the jury that one of the elements to be considered was the loss of worldly advantages which would accrue through the marriage. With reference to the injury to future prospects of marriage, it seems that this would not be a proper element for the consideration of the jury, there being no claim that the plaintiff had been seduced by Zubal or otherwise rendered undesirable as a wife by reason of his conduct or treatment. If the contract had not been breached by the defendant, but had been consummated by their marriage, plaintiff would have had no future prospects of marriage which could be considered of financial value, and she therefore lost nothing by the breach so far as future prospects of marriage are concerned. Taylor v Schlichter, supra.

We hold that the court erred in giving to the jury plaintiff's request number eight.

Plaintiff's request number nine, given by the trial court to the jury before argument, is as follows:

"The court instructs you as a matter of law, that if you find from the evidence that George Zubal proposed marriage to Anna Labos, and that she accepted such proposal; that thereby they became engaged to marry; that subsequently George Zubal unjustifiably and maliciously changed his mind and abruptly refused to marry Anna Labos under circumstances which were degrading and humiliating to Anna Labos, then, you, as jurors, may give such an amount of vindictive or exemplary damages, in addition to compensatory damages, as will mark your disapprobation and deter others from the violation of such sacred promises.

"However, the damages given must not be excessive or disproportionate to the injury.

"By the term 'malicious' is not meant spite or ill will, but the intentional doing of a wrongful act without just cause or excuse."

The trial court was clearly in error in submitting to the jury the question of punitive damages. There is an allegation in the amended petition which avers that George Zubal "suddenly and unexpectedly repudiated and renounced said contract to marry" and this allegation is made for the purpose of laying the foundation for establishing punitive damages. It may now be considered as settled in Ohio that punitive damages may be recovered under proper allegations and proof of malice, wantonness, ruthlessness or oppression in actions for breach of promise of marriage. But the right to recover exemplary damages is based upon the reason that such damages are awarded, over and above the amount necessary to compensate the injury complained of, by way of punishment to the wrongdoer and of warning to others. That this right perishes with the debtor is held in the case of Johnson v Levy, 118 L.A. 447; 43 So. 46; 118 A.S.R. 378; 10 Ann. Cas. 722; 9 L.R.A. (N.S.) 1020. See also 4 R.C.L. 158.

Since the purpose of awarding exemplary damages is to punish the wrongdoer, as a rule his death destroys the right to them and they can not be recovered against his estate or his heirs or other representatives. Morris v Duncan, 126 Ga. 467; 54 SE 1045; 115 A.S.R. 105; Hewlett v George, 68 Miss. 703; 9 So. 885; 13 L.R.A. 682, and note. Notes: 28 A.S.R. 875; 8 Eng. Rul. Cas. 379; 8 R.C.L. 595, §139.

Since we can not know how much of the verdict in this case was intended by the jury as a compensation for the plaintiff's injuries, and how much by way of punishing George Zubal (after his death), we

222

must hold that this charge was prejudicially erroneous. Cleveland Ry. Co. v Weisenberger, 15 Oh Ap 437, p. 443.

But counsel for the plaintiff urge that the error of the court with respect to punitive damages will not warrant the reversal of this case under the two-issue rule, so-called. There were not two issues in this case, the sole issue being the breach of the alleged contract of marriage. There is no definite rule by which to measure the damages to which the plaintiff may be entitled upon such breach. The question of punitive damages is not a separate issue but is merely a matter to be considered by the jury, under proper allegation and proof, in fixing the total amount of the damages. Aside from this, the two-issue rule applies only where one issue has been properly submitted, and there being errors in the charge of the court relating to the question of compensatory damages, as well as punitive damages, the rule can not be availed of to sustain the judgment in this case.

Having found that the errors hereinbefore referred to are prejudicial to the rights of the defendant, it follows that substantial justice has not been done and the judgment of the trial court must be, and the same is, reversed.

Judgment reversed.

CARTER and ROBERTS, JJ, concur.