447 So.2d 164 (1984)
Murray G. HILL, Jr., as Administrator of the Estate of John Milton Giordano, IV, Deceased, and Murray G. Hill, Jr., as Administrator of the Estate of Lewis Wayne Giordano, Deceased
v.
John Milton GIORDANO, Jr., as Administrator of the Estate of John Milton Giordano, III.
82-972.
Supreme Court of Alabama.
February 3, 1984.
Rehearing Denied March 9, 1984.
Joseph M. Brown, Jr. of Cunningham, Bounds, Yance, Crowder & Brown and J. Edward Thornton of Thornton & McGowin, Mobile, for appellants. Alex T. Howard, Jr., David C. Hannan, and Celia J. Collins of Johnstone, Adams, May, Howard & Hill, Mobile, for appellee.
PER CURIAM.
Being of the opinion that any modification or abolition of the parental immunity doctrine should be left to the prerogative of the legislature, we affirm the judgment below on the authority of Owens v. Auto Mutual Indemnity Co., 235 Ala. 9, 177 So. 133 (1937).
AFFIRMED.
TORBERT, C.J., and MADDOX, ALMON, SHORES, EMBRY, BEATTY and ADAMS, JJ., concur.
FAULKNER and JONES, JJ., dissent.
JONES, Justice (dissenting).
I respectfully dissent.
Plaintiff appeals from the trial court's grant of summary judgment in a wrongful death action brought by the administrator of the estates of John Milton Giordano, IV, and Lewis Wayne Giordano, deceased minor children of the Defendant's intestate, against the administrator of the estate of John Milton Giordano, III, deceased. The parties agree that the trial court's order of dismissal is based solely on the doctrine of parental immunity as stated in Owens v. Auto Mutual Indemnity Co., 235 Ala. 9, *165 177 So. 133 (1937). I would overrule Owens and reverse and remand.
On March 2, 1981, John Milton Giordano, III, was piloting his small aircraft in which his wife, Cynthia H. Giordano, and his two minor sons, John Milton Giordano, IV, and Lewis Wayne Giordano, were passengers. Plaintiff/Appellant, as administrator of the estates of the two boys, alleges, inter alia, that the pilot/father negligently operated the aircraft and caused it to crash, thus proximately causing the deaths of the two boys, as well as his own, and his wife's deaths. Plaintiff appeals from the judgment of dismissal, made final pursuant to ARCP 54(b),[1] seeking abrogation of the parental immunity doctrine.
Legal scholars who have addressed this issue generally agree that the common law doctrine of parental immunity was created in 1891, when the Supreme Court of Mississippi decided the case of Hewlett v. George, 68 Miss. 703, 9 So. 885 (1891). A minor daughter brought an action against her deceased mother's estate for personal injuries allegedly resulting from wrongful imprisonment in an insane asylum. The court said:
"The peace of society, and of the families composing society, and a sound public policy, designed to subserve he repose of families and the best interests of society, forbid the minor child a right to appear in court in the assertion of a claim to civil redress for personal injuries suffered at the hands of the parent." 68 Miss. at 711, 9 So. at 887.
The Mississippi court did not base its decision on the English common law, nor on statutes or prior cases. Indeed, I find no suggestion of any earlier precedent for the doctrine. Over the years, many courts, including this Court in Owens v. Auto Mutual Indemnity Co., supra, embraced the idea of parental immunity, justifying their decisions on the policy considerations announced in Hewlett. These courts have upheld the doctrine on such grounds as: 1) domestic harmony and tranquility; 2) parental care, discipline, and control; 3) danger of fraud and collusion; and 4) depletion of family resources. See Berman, Time to Abolish Parent-Child Tort Immunity: A Call to Repudiate Mississippi's Gift to the American Family, 4 Nova L.J. 25, 33 (1980).
In recent years, however, courts have whittled away at the immunity by creating numerous and varied exceptions. These exceptions have developed in cases where the court considers the parent-child relationship to have been abandoned, or where the tortious act of the parent does not arise out of the family relationship. See Comments: Parent-Child Tort Immunity: A Rule in Need of Change, 27 U.Miami L.Rev. 191 (1972).
Most courts agree that immunity does not apply to emancipated children, because the justifications for the rule cease to exist when the child leaves the support and security of the parents' home. See Berman, supra, n. 61. Secondly, some courts refuse to recognize immunity for the intentional, wanton, or reckless infliction of bodily harm. Id., n. 62. By intentionally harming a child, the courts reason, the parent steps out of the bounds of parental capacity.
Another exception recognized by the courts is for negligent harm inflicted in the course of a business activity carried on by the parent. These courts reason that business enterprises customarily carry liability insurance, and it is essentially irrelevant that the injured person is a child of the insured. Id., n. 63.
The death of the parent and/or child, terminating the parent/child relationship, is also recognized as an exception to the doctrine. Id., n. 64. The presence of liability insurance is used as a factor in limiting the immunity, as well as the argument that the death statute vests a cause of action in surviving beneficiaries or in an administrator, and that the purpose of the death statute would be defeated if immunity were recognized. See Restatement (Second) of Torts § 895G (1979), Comment g.
*166 Among those states embracing parental immunity, cases attempting to abolish or limit the doctrine seem to have their inception in Goller v. White, 20 Wis.2d 402, 122 N.W.2d 193 (1963). There, the Wisconsin Supreme Court partially abrogated the parent/child immunity, retaining its narrow field of operation for acts done in the maintenance of parental authority over the child, and "where the alleged negligent act involves an exercise of ordinary parental discretion with respect to the provisions of food, clothing, housing, medical and dental services, and other care." 20 Wis.2d at 413, 122 N.W.2d at 198.
The term "other care" was later interpreted by the Wisconsin court not to be so broad in scope as to cover all parental conduct associated with the family relationship; and, specifically, parents' supervision of their children at play fell outside the area where immunity had been retained. Cole v. Sears Roebuck & Co., 47 Wis.2d 629, 635, 177 N.W.2d 866, 868 (1970).
While Goller has been followed by a substantial minority of jurisdictions, a number of jurisdictions have completely abolished the immunity doctrine. The California Supreme Court, in Gibson v. Gibson, 3 Cal.3d 914, 92 Cal.Rptr. 288, 479 P.2d 648 (1971), rejected the Goller approach and totally abrogated the immunity rule. The solution proposed in Gibson judges parental conduct according to the following standard: "What would an ordinarily reasonable and prudent parent have done in similar circumstances?" A parent is thus held to a standard of reasonableness viewed in light of the parental role, regardless of the classification of his conduct.
Similar to the view of the California court is that espoused by the Restatement (Second) of Torts § 895G, which reads as follows:
"(1) A parent or child is not immune from tort liability to the other solely by reason of that relationship.
"(2) Repudiation of general tort immunity does not establish liability for an act or omission that, because of the parent-child relationship, is otherwise privileged or is not tortious."
Subsection (1) completely abrogates the doctrine. The Comment to subsection (2) indicates that instances remain in which the parent/child relationship is still a relevant consideration in determining whether a physical harm should be actionable. The privilege of parental discipline, for example, may involve physical contact that would be considered actionable between strangers, but not actionable within the family.
The intimacies of family life also affect the determination of whether conduct is negligent. Normally, if the conduct which causes the injury does not grow directly out of the family relationship, the existence of negligence may be determined as if the parties were not related.
Conduct involving the exercise of parental authority or supervision, as well as the performance of parental duties, such as the duty to provide a safe place in which to live, and the other necessities of life, is essential to the parent/child relationship. For activities central to that relationship, particularly within the home itself, there is some relaxation of the stricter standard of conduct applied in dealing with third persons. As the Comment to subsection (2) observes, occurrences normally regarded as commonplace incidents in family life are "usually treated as accidents rather than the basis for imposing legal liability."
The Court, in Owens v. Auto Mutual Indemnity Co., supra, attempted to analogize the parental immunity doctrine to the common law doctrine of interspousal immunity. At common law, interspousal tort immunity was a consequence of the legal identity of husband and wife. Husband and wife were considered as one person, and that person was the husband; so it was objectionable to permit a tort suit between two spouses. With the passage of statutes on the rights of married women, however, a wife was given a separate legal identity and a separate legal estate in her own property, thus allowing personal injury actions between spouses.
*167 Alabama abolished interspousal immunity in Johnson v. Johnson, 201 Ala. 41, 77 So. 335 (1917).[2] Because the legislature gave the wife an action against the husband for injuries to her property rights, the Johnson Court held that the legislature did not intend to deny the wife the right to sue her spouse separately, in tort, for damages arising from assaults upon her person. Johnson was followed by the Fifth Circuit in Bonner v. Williams, 370 F.2d 301 (5th Cir.1966), holding that a wrongful death action may be maintained by the deceased spouse's personal representative or dependent against the tortfeasor spouse or his estate.
Arguably, the obligation of support incident to the disability of a minor is different from the support due to the status of spouses. Is the separateness of the legal entity of the wife enough to justify a distinction for not having interspousal immunity, but for maintaining parental immunity? Stated another way, the question remains: Given the right of minors to legally enforce property rights and contractual obligations without respect to the parent/child relationship, and given the risk of family disunity inherent in the wife's right to sue her husband, do sufficient policy reasons persist for the retention of parental immunity for actions in tort? I think not.
As stated before, the foundation for the concept of parental immunity in this State is Owens v. Auto Mutual Indemnity Co., supra. There, the Court asked this question:
"Does the statute [§ 6-5-391], (as to suit by a personal representative to maintain an action and recover such damages as the jury may assess for injuries causing death of a minor child), even though it does not contain that portion of [§ 6-5-410] of the Code providing `if the testator or intestate could have maintained an action for such wrongful act, omission, or negligence, if it had not caused death,' give the right of action to such minor child? And since [§ 6-5-391] does not contain the exception `if the testator or intestate could have maintained an action for such wrongful act,' etc., does it change the rule of the common law and give the right to personal representative to sue for the tort committed by the parent on the child." 235 Ala. at 12, 177 So.2d at 136? (Emphasis original.)
The Court answered the question in the negative, holding that "in the absence of a specific statute to the contrary, the rule in question, so long prevailing, would prevent an unemancipated minor child from recovering for an injury in tort against a parent." 235 Ala. at 12, 177 So.2d at 136 (Emphasis supplied.)
It is apparent from a careful reading of Owens that counsel for the appellant argued that an action for wrongful death of a minor should lie even in the absence of an action for personal injury on behalf of a child against a parent. Evidently, counsel reasoned that because the minor's wrongful death statute did not contain the language "if the ... intestate could have maintained an action for such wrongful act... if it had not caused death"language which appears in the adult wrongful death statutean action should lie.
The obvious weakness of this argument is that it presumes the pre-existence of the common law doctrine of parental immunity. This narrow approach led the Court to observe, erroneously, that the wrongful death statute (Code 1975, § 6-5-391) did not intend to change the rule of the common law to give the personal representative the right to sue for the death of a minor resulting from the wrongful conduct of a parent.
Thus, the error is compounded, because both the adult wrongful death statute (Code 1975, § 6-5-410, initially enacted in *168 1852), and the minor wrongful death statute (Code 1975, § 6-5-391, initially enacted in 1876), preceded the earliest pronouncement of the common law parental immunity doctrine in 1891the date of Hewlett v. George, supra. The longest prevailing of the two rules, then, is the wrongful death statute and not the parental immunity doctrine.[3] Obviously, the legislature, in its enactment of the wrongful death statute, could not possibly have intended to change a rule of law not then in being. Indeed, the inquiry should be reversed: Absent a specific statute to the contrary, should the Court adopt an exception to the general law of torts with the effect of contravening the policy considerations of the long prevailing Homicide Act?
The purpose of the wrongful death statute is to prevent homicide by wrongful act, omission, or negligence "without respect to personal condition or disability of the person so protected." Breed v. Atlanta, B. & C.R.R., 241 Ala. 640, 642, 4 So.2d 315, 316 (1941). The parental immunity doctrine has its basis in domestic harmony. Isn't the commission of the tort, in and of itself, disruptive to domestic harmony? We believe this question is self-answering, and to allow an exception to prevail over the wrongful death statute is to give undue prominence to that exception. After weighing the alternatives, I would abolish the exception and hold that a child or his representative may be compensated or awarded damages appropriate to the cause of action for negligent, wanton, or intentional acts which inflict injury or death.
In the final analysis, the parental immunity doctrine must be viewed for what it is: It is an exception to the common law rule that liability results for the infliction of tortious injuries. To be sure, I was tempted, initially, to follow the course of action of states that have carved out exceptions to the doctrine. These exceptions, however, are nothing more than exceptions to the exception. In my view, when the point is reached where the courts promulgate exceptions, and then create exceptions to the exception, it is time for re-examination. Therefore, after carefully considering each of the recognized exceptions to the parental immunity doctrine, I believe they create more problems than they solve.
Indeed, the Wisconsin experience is a case in point. The Goller court, recognizing the parental immunity doctrine, established an exception partially abrogating the immunity. Subsequently, the Cole case qualified the earlier Goller holding. Thus, Goller recognized the immunity exception to the law of torts and created an exception to the exception. Then Cole, in effect, created an exception to the exception to the exception.
It seems to me that the more straightforward approach is to adopt § 895G of the Restatement. As § 895G recognizes, however, total abrogation of the doctrine raises certain questions concerning the role of parental discipline, supervision, duty of support, and the intimacies of family life. But this is not an abberation in the law of torts. Instead, by qualifying that conduct which is actionable on behalf of a minor against a parent, the Restatement represents a complete return to the common law. In other words, tort law, as it had evolved prior to Hewlett, recognized that certain parental conduct, otherwise tortious as between strangers, would not be cognizable as between parent and child.
In my view, it is better to totally abrogate the immunity and qualify parental *169 conduct which will not be cognizable as tortious, than to retain the immunity exception and further complicate the law upon which damages may be awarded for conduct causing injury or death.
In conclusion, replying to the argument (common to both interspousal and parental immunity) that familial conflict is better kept in the home rather than aired publicly, I quote from Johnson, supra:
"[A]s for the policy which would avoid the public airing of family troubles, we see no reason why it should weigh more heavily against this action than against those which the courts universally allow." 201 Ala. at 44, 77 So. at 338.
FAULKNER, J., concurs.
NOTES
[1] The suit includes other defendants to whom the judgment of dismissal does not apply.
[2] Although Johnson is commonly alluded to as abolishing interspousal immunity in Alabama, and although the case explicitly states that "at common law no such action could be maintained," it does not cite, nor do we find, any earlier Alabama cases expressly applying the doctrine of interspousal immunity. More accurately, then, Johnson, while not overruling earlier precedent to the contrary, refused to adopt interspousal immunity in Alabama.
[3] At first blush, it appears there was a hiatus between 1852 and 1876 when no wrongful death action existed in Alabama on behalf of a deceased minor. This is not true. In actuality, the 1852 statute was all-inclusive, covering all natural persons. The 1876 act merely created a parental preference for the institution of suit on behalf of the deceased minor, in lieu of vesting the cause of action in the personal representative, under the circumstances therein prescribed. Apparently unaware of the history of the two acts, the appellant in Owens, centering his argument on the difference in the wording of the two acts, misled the Court in its rationale with respect to the intent of the subsequent act to abolish the common law parental immunity doctrine, when, in fact, no such common law doctrine existed at the time of the enactment of the wrongful death statute in 1852.