539 So.2d 264 (1989)
Melissa HURST
v.
Alfred Robert CAPITELL and Mary Jane Capitell.
87-982.
Supreme Court of Alabama.
January 16, 1989.
*265 Tom Wright of Reese & Wright, Montgomery, for appellant.
Philip H. Butler and Scott R. Talkington of Robison & Belser, Robert C. Black of Hill, Hill, Carter, Franco, Cole & Black, Montgomery, for appellees.
Don Siegelman, Atty. Gen., and Kenneth S. Nunnelley and Dorothy F. Norwood, Asst. Attys. Gen., amicus curiae, for appellant.
PER CURIAM.
Melissa Hurst, a minor, through her grandmother, sued her stepfather, Alfred Capitell, for damages based upon claims of sexual abuse. She also sued her natural mother, Mary Jane Capitell, claiming damages based upon her alleged aiding and abetting in Mr. Capitell's sexual abuse and based upon Mrs. Capitell's alleged willful and wanton conduct and negligent performance of her duties as a mother, all of which allegedly allowed the abuse to occur. The trial court dismissed the action as to Mrs. Capitell and granted summary judgment in favor of Mr. Capitell, based upon the parental immunity doctrine because of his in loco parentis status. Melissa appeals from those rulings and asks us to reconsider the philosophy supporting the parental immunity doctrine and to abolish it.
The parental immunity doctrine had its genesis in the United States in Hewellette v. George, 68 Miss. 703, 9 So. 885 (1891), in which a minor daughter was precluded from suing her deceased mother's estate for damages resulting from mental suffering and injury to her character incurred during her confinement in an asylum for 11 days caused by her mother. The court gave this reason for its holding:
"The peace of society, and of the families composing society, and a sound public policy, designed to subserve the repose of families and the best interests of society, forbid to the minor child a right to appear in court in the assertion of a claim to civil redress for personal injuries suffered at the hands of the parent. The state, through its criminal laws, will give the minor child protection from parental violence and wrongdoing, and this is all the child can be heard to demand."
68 Miss. at 711, 9 So. at 887.
The parental immunity doctrine was not based upon English common law, statutes, or previous cases; rather, it was judicially created by the Mississippi Supreme Court. In fact, even the Hewellette opinion recognized the limitation on the application of parental immunity to those cases involving unemancipated children:
"If ... the relation of parent and child had been finally dissolved, insofar as that relationship imposed the duty upon the parent to protect and care for and control, and the child to aid and comfort and obey, then it may be the child could successfully maintain an action against the parent for personal injuries. But so long as the parent is under obligation to care for, guide, and control, and the child is under reciprocal obligation *266 to aid and comfort and obey, no such action as this can be maintained."
Id., 68 Miss. at 711, 9 So. at 887. (Emphasis added.)
The first Alabama case addressing the issue of parental immunity, Owens v. Auto Mut. Indemnity Co., 235 Ala. 9, 177 So. 133 (1937), quoted from a New Hampshire case that states a similar reason for the rule:
"It is declared in Lloyd Dunlap v. Dunlap, 84 N.H. 352, 150 A. 905, 71 A.L.R. 1055 [1930] that the `disability of a child to sue the parent for an injury negligently inflicted by the latter upon the former while a minor is not absolute, but is imposed for the protection of family control and harmony, and exists only where the suit, or the prospect of a suit, might disturb the family relations.'"
235 Ala. at 10, 177 So. at 134. (Emphasis added.)
We reaffirmed the doctrine in Hill v. Giordano, 447 So.2d 164 (Ala.1984) (Jones, J., dissenting), based on the authority of Owens, supra, and held that "any modification or abolition of the parental immunity doctrine should be left to the prerogative of the legislature." 447 So.2d at 164. However, we also stated three months later in Lloyd v. Service Corporation of Alabama, Inc., 453 So.2d 735 (Ala.1984):
"While the preferred method for modification of a rule of law is by legislative action, it is clearly within the power of the judiciary, and, at times, appropriate for the judiciary, to change an established rule of law....
"... [W]here a judicial creation has become outmoded or unjust in application, it is more often appropriate for the judicial body to act to modify the law."

(Emphasis added.)
Because the doctrine was judicially created, it is not exclusively a legislative issue and it may be judicially qualified. Since our decision in Hill to defer to the Legislature on this issue, the Legislature has declined to act in regard to the doctrine, while the incidents of sexual abuse involving children have continued to occur. To leave children who are victims of such wrongful, intentional, heinous acts without a right to redress those wrongs in a civil action is unconscionable, especially where the harm to the family fabric has already occurred through that abuse. Because we see no reason to adhere to the doctrine of parental immunity when the purpose for that immunity is no longer served, as in Melissa's case, we are today creating an exception to the doctrine, limited to sexual abuse cases only.
In creating this exception for sexual abuse cases, we believe it is unnecessary to spell out a separate body of procedural and substantive rules to govern such cases. Traditional rules of tort law relating to intentional infliction of personal injury are generally sufficient for the governance of such claims and the defenses asserted thereto.
In the interest of preserving the unqualified right of parents to reasonably discipline their children, we do deem it appropriate, however, to require that the proof of alleged sexually abusive conduct be tested under a "clear and convincing" standard, as opposed to a mere "substantial evidence" standard. Because we are restricting this exception to the general rule to cases involving "sexual abuse," and requiring a "clear and convincing" standard of proof, we do not perceive of our recognition of this narrow exception as posing an undue risk of limiting the parents' legitimate role in the disciplining of their children.
In creating this exception to the parental immunity doctrine, we make no distinction between natural or adoptive parents or stepparents; the plethora of such cases as Melissa's indicates that sexual abuse is not a respecter of parental status. Thus, civil suits by children against parents for sexual abuse are not confined to a particular category of "parent." Therefore, the trial court's dismissal in favor of Mary Jane Capitell and its summary judgment for Alfred Capitell are both reversed and the case is remanded for trial.
REVERSED AND REMANDED.
*267 TORBERT, C.J., and MADDOX, JONES, BEATTY[1] and HOUSTON, JJ., concur.
STEAGALL, J., concurs in part and dissents in part.
ADAMS, J., dissents.
STEAGALL, Justice (concurring in part, dissenting in part).
I concur in that portion of the majority's opinion that creates an exception to the parental immunity doctrine for sexual abuse cases only. Under ordinary circumstances, I believe the Legislature should address this problem, but, as pointed out in the majority opinion, the Legislature has declined to act since that suggestion was made in the Hill case in 1984.
Because of the severe adverse effect that sexually abusive acts have upon the victims and because the rationale for the immunity doctrine fails when family control and harmony are lost, as in this case, I believe the time has come to allow this exception to the doctrine.
I must, however, disagree with the majority's decision to allow punitive damages as well as compensatory damages. Punitive damages are designed to punish the wrongdoer, but, in this situation, the punishment is provided by our criminal statutes. On the other hand, compensatory damages, if recoverable, will at least provide the abused child the opportunity to be afforded medical assistance and counseling to help overcome the trauma of the sexual abuse. For these reasons, I feel that compensatory damages would be sufficient, and I respectfully dissent from that portion of the opinion that would allow punitive damages.
NOTES
[1] Justice Beatty did not sit for oral argument but did listen to the tape of the oral argument.